IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS ROWE, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>DPI SPECIALTY FOODS, INC., and JAMI FLOYD, an individual,<br><br>          Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:13-cv-00708-DN<br><br>District Judge David Nuffer |

Defendants DPI Specialty Food, Inc. ("DPI") and Jami Floyd (collectively, "Defendants") move[1] for summary judgment dismissing Plaintiff Thomas Rowe's Complaint[2] in its entirety. The parties' memoranda and supporting documentation have carefully been reviewed. For the reasons set forth below, Defendants' motion for summary judgment is hereby DENIED. Oral argument is unnecessary.[3]

BACKGROUND ............................................................................................................. 2
STANDARD OF REVIEW ............................................................................................ 3
UNDISPUTED FACTS .................................................................................................. 3
ANALYSIS ..................................................................................................................... 4
    A.    Defamation ................................................................................................ 4
          a.    The statements are subject to privilege, but whether Defendants abused their qualified privilege is genuinely disputed ................................. 5
          b.    Whether there is a causal link between Defendants' defamatory statements and Mr. Rowe's injury is in genuine dispute ......................... 10
    B.    Tortious Interference with Economic Relations .................................... 14
          a.    A qualified privilege applies to Mr. Rowe's claim for tortious interference ............................................................................................. 14
          b.    Whether there is a causal link between Defendants' interfering statements and Mr. Rowe's injury is in genuine dispute ......................... 15
CONCLUSION ............................................................................................................. 16

---

[1] Defendants' Motion for Summary Judgment ("Motion"), docket no. 38, filed November 5, 2014.

[2] Complaint, docket no. 2-1, filed July 29, 2013.

[3] *See* DUCivR 7-1(f).

**BACKGROUND**

Mr. Rowe was terminated from his employment at Premier Sales Solutions ("Premier"). Premier is a food broker that works with retailers and distributors. At the time of Mr. Rowe's termination, Robert Kinsella was Premier's owner and president. Mr. Rowe was employed by Premier for five years, during which time he worked with Smith's Food & Drug Centers, Inc. ("Smith's"). Prior to joining Premier, Mr. Rowe worked with Smith's in the deli category for approximately fourteen years.

Premier had contracted with DPI to assist DPI with the sale of deli food products to Smith's. DPI is a distributor and manufacturer of various specialty food items and markets its items to various retailers, including Smith's. During the time period in which the alleged defamatory statements occurred, Mr. Rowe was the lead of the Premier team that assisted and supported DPI in supplying deli products to Smith's, and Ms. Floyd was the head of the DPI team responsible for deli sales to Smith's.

Mr. Rowe's Complaint asserts two causes of action—defamation and tortious interference with economic relations ("tortious interference"). Mr. Rowe alleges that in August 2012, Ms. Floyd, within the course and scope of her employment with DPI, began to make defamatory statements regarding Mr. Rowe. Mr. Rowe argues the defamatory statements caused him to be removed from the Smith's account in September 2012. And although Mr. Rowe remained employed with Premier for several months after his removal from the Smith's account, his employment with Premier was ultimately terminated in January 2013. Mr. Rowe contends that the termination was a result of Defendants' defamatory statements.

Defendants argue that Mr. Rowe cannot sustain his two claims because he cannot prove the causation element of each claim. That is, Defendants say there is no causal link between the wrongs alleged by Mr. Rowe and his alleged injury—Premier's decision to terminate his

employment. Defendants state that the decision to terminate Mr. Rowe's employment with Premier was made by Mr. Kinsella, the owner of Premier. And Defendants state that Mr. Kinsella testified that nothing Defendants said or did factored into his decision to terminate Mr. Rowe's employment. Defendants also contend that summary judgment on both claims is appropriate because all communications at issue fall under the common interest privilege.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[5] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[6] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

## UNDISPUTED FACTS[8]

1.      Mr. Rowe alleges that DPI published the following allegedly defamatory statements about him: (a) before September 6, 2012, Jami Floyd contacted the owner of Premier, Rob Kinsella, and accused Mr. Rowe of misappropriating funds at a charity golf tournament; (b) in August 2012, Ms. Floyd told Mr. Kinsella that Smith's no longer wanted Mr. Rowe to help with Smith's cheese merchandising; (c) at some point, Ms. Floyd told Mr. Kinsella that Smith's no longer wanted Mr. Rowe to call on Smith's; (d) in late 2012 or early 2013, Ms. Floyd told

---

[4] Fed. R. Civ. P. 56(a).

[5] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[6] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[8] Other undisputed facts not critical to the decision are discussed in the memorandum decision in context.

Christina Johnson that Mr. Rowe was barred from working with Smith's because he was not willing to work competitive product; and (e) in late 2012 or early 2013, Ms. Floyd told Robert Schindler that Mr. Rowe was no longer in the food brokerage business.[9]

      2.      The same statements that form the basis of Mr. Rowe's defamation claim also form the basis of his tortious interference claim.[10]

      3.      Mr. Rowe claims that the alleged defamatory and interfering statements harmed him by causing him to lose his job with Premier.[11]

## ANALYSIS

Defendants' Motion does not separately address Mr. Rowe's defamation and tortious interference claims. Rather, Defendants simultaneously argue that summary judgment is appropriate on both claims because: (1) all communications at issue fall under the common interest privilege; and (2) the causation element of both claims has not been met. For the sake of clarity, however, each claim is separated and addressed individually in this Order.

### A.  Defamation

"Defamation is the act of harming the reputation of another by making a false statement to a third person."[12] "Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation . . . ."[13] "A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff."[14] Although Defendants question whether all five alleged statements are

---

[9] Motion at 7; Memorandum in Opposition to Defendants' Motion for Summary Judgment at xlv ("Opposition"), docket no. 53, filed December 18, 2014 (filed under seal).

[10] *Id.*

[11] *Id.*

[12] *Jensen v. Sawyers,* 130 P.3d 325, 333 (Utah 2005).

[13] *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994).

[14] *Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988).

defamatory, they state Mr. Rowe's allegations as an undisputed fact. Thus, the motion does not focus on the sufficiency of the statements as defamatory. Defendants simply raise the question of whether the statements qualify as defamatory, but then proceed with their argument under the assumption that the alleged statements are defamatory.[15] Naturally, Mr. Rowe does not dispute the defamatory nature of the alleged statements. Because the parties did not provide any legal analysis on the defamatory nature of the statements, for purposes of the present motion for summary judgment, all five alleged statements are considered defamatory.

In order to establish a defamation claim, a plaintiff must demonstrate that "(1) the defendant published the statements . . . [in print or orally]; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages."[16]

Only the third and fifth elements of Mr. Rowe's defamation claim are at issue in this motion for summary judgment. Each element is discussed in turn below.

**a.  *The statements are subject to privilege, but whether Defendants abused their qualified privilege is genuinely disputed***

The third element of Mr. Rowe's defamation claim requires him to show that no privilege applies to the statements or that if a privilege exists, it has been abused. "[C]ommunications between persons who share a common business interest are qualifiedly privileged and not libelous in the absence of malice."[17] ""[W]hether a communication is privileged is for a court to determine."[18] "If a qualified privilege exists, the burden is on the plaintiff to prove that the privilege was abused.[19]

---

[15] Motion at 20–21.

[16] *DeBry v. Godbe*, 992 P.2d 979, 982 (Utah 1999).

[17] *Lind v. Lynch*, 665 P.2d 1276, 1278 (Utah 1983).

[18] *Alford v. Utah League of Cities and Towns*, 791 P.2d 201, 205 (Utah 1990).

[19] *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 58 (Utah 1991).

*The Statements at Issue are Qualifiedly Privileged*

Defendants contend that all of the statements at issue "occurred while Ms. Floyd was acting on behalf of DPI to further the shared business interests of DPI and the companies with whom Ms. Floyd was communicating."[20] Therefore, they would be subject to a qualified privilege overcome only by malice. Mr. Rowe responds, in a footnote, that he

> does not concede that the common interest privilege applies in this case. None of Ms. Floyd's communications about Mr. Rowe were meant to protect interests held by both DPI and Premier. For example, no one at Smith's made any complaint regarding the fact that they didn't receive raffle tickets, invalidating Ms. Floyd's stated reason for making her allegations regarding Mr. Rowe's misappropriation. Further, there was no "common interest" basis for forwarding the Mitch Alm emails, since Mr. Alm no longer worked for Smith's, and Mr. Rowe had not worked for Premier at the time of the emails. Notwithstanding these points, Mr. Rowe focuses here on the arguments regarding abuse of the privilege, so as not to burden the Court with additional argument.[21]

Notwithstanding Mr. Rowe's argument and lack of concession, the alleged defamatory statements at issue are qualifiedly privileged. Defendants had a legitimate business interest in discussing with Mr. Kinsella (the owner of Premier) issues and concerns they had with Mr. Rowe's job performance. Similarly, Christina Johnson and Robert Schindler also had a legitimate interest in receiving information about a broker affiliated with DPI because both Ms. Johnson and Mr. Schindler worked for companies that have a business relationship with DPI.[22] Ms. Floyd's forwarding certain "Mitch Alm emails" was not alleged by Mr. Rowe to be a defamatory statement.

*There is an Issue of Fact of Whether the Qualified Privilege was Abused*

Because a qualified privilege applies, the burden shifts to Mr. Rowe to prove that the privilege was abused. "The plaintiff can show abuse of the privilege by proving that the

---

[20] Motion at 22.

[21] Opposition at 13, n. 14.

[22] Motion at 12; Opposition at liv–lv (Mr. Rowe attempts to dispute these facts, but his dispute is improper argument without any legal or evidentiary support).

defendant acted with malice or that the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it."[23] "The 'malice' required to overcome the conditional privilege consists of proof that the utterances were made from spite, ill will, or hatred towards plaintiff."[24]

According to Defendants, Mr. Rowe cannot overcome the privilege because he "has no evidence that the statements were made with ill will or excessively published."[25] Mr. Rowe responds that malice exists because "both Ms. Floyd and DPI had expressed frustration with Mr. Rowe and had reasons for wishing him gone from his position."[26] Supporting malice on the part of DPI, Mr. Rowe contends that DPI was paying Premier more than other brokerage companies because of his strong relationship with Smith's and the high level of service Premier provided.[27] Mr. Rowe points out that DPI had tried in the past to decrease Mr. Rowe's compensation or involvement but had been blocked from doing so by Smith's.[28] Mr. Rowe's involvement was a matter of expense to DPI. Mr. Rowe also asserts that "DPI knew that Mr. Rowe's role in the relationship was a threat to its hopes to expand its own role, and had strong incentives to reduce

---

[23] *Brehany,* 812 P.2d at 58.

[24] *Johnson v. Cmty. Nursing Servs.,* 985 F. Supp. 1321, 1329 (D. Utah 1997) (citing *Combes v. Montgomery Ward & Co.,* 228 P.2d 272, 276–77 (Utah 1951)).

[25] Motion at 5; *see also* Declaration of Jami Floyd in Support of Defendants' Motion for Summary Judgment ¶ 11, docket no. 39, filed November 5, 2014.

[26] Opposition at 16.

[27] *Id.* at xvi–xvii, ¶¶ 25-27, and 16–17.

[28] *Id.* at xix, ¶ 35. Defendants object to all email exhibits submitted by Mr. Rowe on the basis that Mr. Rowe has not given any foundation or provided any authentication. Rule 901 of the Federal Rules of Evidence states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A document may be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4). Mr. Rowe's proffered email exhibits have distinctive characteristics, such as the name of the person connected to the email address, and the names of the senders and the recipients. The contents of the emails also authenticate them as being from the purported sender to the purported recipient, because they contain discussions of identifiable matters, such as Mr. Rowe's work for Smith's. The distinctive characteristics of the emails suggest that they are what they purport to be and thus are sufficiently authenticated for consideration at summary judgment.

his stature."[29] Mr. Rowe emphasizes that after he "was out of the picture, DPI succeeded, negotiating a substantial reduction on its fees paid to Premier, which overturned a precedent that ran all through Mr. Rowe's tenure with Premier."[30] Defendants reply that "[c]itations to an attempt years earlier to reduce a commission to Mr. Rowe's prior company, not even involving Ms. Floyd, does not create malice on the part of DPI."[31] Defendants further contend that "negotiation of a new commission arrangement with Premier a year after Mr. Rowe was terminated does not somehow evidence that DPI had malice towards Mr. Rowe."[32]

Supporting malice on the part of Ms. Floyd, Mr. Rowe points to evidence that he and Ms. Floyd had experienced a number of personal conflicts shortly prior to his removal from the Smith's account.[33] As some examples of malice, Mr. Rowe points out that Ms. Floyd acted "coolly to Mr. Rowe at a Smith's store," during an event;[34] Ms. Floyd started setting up meetings with Smith's personnel without including Mr. Rowe;[35] and Ms. Floyd forwarded old emails to a Smith's representative, which arguably reveal that Mr. Rowe had engaged in some improprieties with a former Smith's employee.[36]

"[I]n addition to other common law means, such as excessive publication or common law malice, a plaintiff can show abuse of a conditional privilege where the defendant (1) made a defamatory statement knowing it to be false or (2) acted in reckless disregard as to its falsity."[37]

---

[29] *Id.* at 16.

[30] *Id.* at 17.

[31] Reply Memorandum in Support of Defendants' Motion for Summary Judgment ("Reply") at 11, docket no. 59, filed January 16, 2015.

[32] *Id.*

[33] Opposition at 17.

[34] *Id.* at xxxv–xxxvi, at ¶ 125.

[35] *Id.* at xxxvi, ¶ 127.

[36] *Id.* at xxxii–xxxiii, ¶¶ 106-108.

[37] *Ferguson v. Williams & Hunt, Inc.*, 221 P.3d 205, 214–215 (Utah 2009).

Mr. Rowe argues that the common interest privilege was further abused because Defendants acted in reckless disregard of the falsity of their alleged statement that "Smith's no longer wanted Mr. Rowe's services."[38] Mr. Rowe cites to deposition testimony of Smith's employees to demonstrate the falsity of the above statement. Specifically, Mr. Rowe cites to Zane Day's (Vice President of Sales Merchandising) and Shellie Hanson's (Service Deli Merchandiser) deposition testimony, where both individuals state that they did not discuss or request that Mr. Rowe be removed from the Smith's account.[39]

Mr. Rowe concludes that "[i]n light of the actual truth expressed by these Smith's representatives[, that Mr. Rowe's removal was never requested by Smith's,] Defendants clearly acted at least with reckless disregard of the truth of their statements that Smith's no longer wanted to work with Mr. Rowe . . . ."[40] Defendants reply that there is no evidence that Ms. Floyd made the statements "without caring if they were true"[41] or any "evidence of a shoddy investigation by Ms. Floyd into the statements at issue."[42] For purposes of this summary judgment motion, Defendants concede that Mr. Rowe is entitled to the assumption that the alleged statement was made.[43] Assuming that the statement was made, Mr. Rowe has presented deposition testimony from Smith's employees creating a factual dispute with the validity of this statement.

Viewing the evidence in the light most favorable to Mr. Rowe, as the non-moving party, and drawing all reasonable inferences in Mr. Rowe's favor, Mr. Rowe has presented sufficient evidence to create a genuine issue of material fact of whether Defendants abused their qualified

---

[38] Opposition at 19.

[39] *Id.* at xli, ¶¶ 150–151.

[40] *Id.* at 20.

[41] Reply at 12.

[42] *Id.*

[43] Motion at 14, n. 3.

privilege. Specifically, as set forth above, Mr. Rowe's evidence creates a reasonable inference that Defendants, frustrated by Mr. Rowe both on a personal and financial level, acted out of malice in their communications with others. Further, Mr. Rowe has presented evidence creating a genuine issue of fact of whether Mr. Floyd acted in reckless disregard of the falsity of her alleged statement that Smith's no longer wanted Mr. Rowe's services.

### b. *Whether there is a causal link between Defendants' defamatory statements and Mr. Rowe's injury is in genuine dispute*

Defendants assert that "Mr. Rowe cannot prove causation."[44] Under Utah law, a claim for defamation must establish causation, or resulting injury. Causation includes both actual and proximate cause. To establish actual cause, Mr. Rowe must prove that "but for" the alleged defamatory statements, Mr. Rowe's injury would not have occurred. Proximate cause, on the other hand, is "cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred."[45]

Defendants argue that "[e]ven if DPI made the statements alleged by Mr. Rowe and even if Mr. Rowe suffered the harm he claims, there is no evidence of a causal link between the two."[46] Defendants contend that "Mr. Rowe is responsible to show that, absent DPI's allegedly defamatory remarks, he would not have been fired."[47] Defendants' main contentions are that "[b]eing pulled from the Smith's account did not cause Mr. Rowe harm, as he kept his job for nearly four months afterward[,]"[48] and "Mr. Kinsella testified unequivocally that the decision to pull Mr. Rowe from the Smith's account and the decision to terminate his employment were

---

[44] *Id.* at 14.

[45] *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 601 (Utah Ct. App. 1995).

[46] Motion at 14.

[47] *Id.* at 15.

[48] Reply at 7.

independent of each other."[49] Mr. Rowe, in response, states that "[t]here is only one documented reason for Mr. Rowe's termination, which is that once he had been removed from working on the Smith's account, there was nothing left for him to do."[50] And his removal, Mr. Rowe asserts, was due to Defendants' alleged defamatory statements. In reply, Defendants argue that "the question here is whether there is any evidence at all demonstrating a causal link between DPI's alleged defamatory statements and Premier's termination of Mr. Rowe."[51] Defendants state that the harm at issue is the loss of Mr. Rowe's job with Premier, and there is no testimony from Mr. Kinsella that DPI played any part in his decision to terminate Mr. Rowe's employment.[52] Defendants further state that "even if Mr. Rowe's story [that he was terminated because he was removed from the Smith's account] were true, it would show an intervening cause that had nothing to do with DPI.[53] The fact that Mr. Rowe kept his job for four months after being removed from the Smith's account and was unable to provide any useful services to his employer would be the actual cause of his claim damages."[54]

The record on this motion, taken in a light most favorable to Mr. Rowe, shows summary judgment must be denied because the cause of Mr. Rowe's removal from the Smith's account and the cause of the termination of his employment are in genuine dispute.

There is an issue of fact of whether the reason for Mr. Rowe's removal was because Smith's no longer wanted to work with Mr. Rowe or because of Defendants' alleged defamatory statements. Defendants state it is the former reason, but Mr. Rowe cites to deposition testimony of Smith's management personnel stating they did not request Mr. Rowe's removal from the

---

[49] *Id*.

[50] Opposition at 12.

[51] Reply at 5.

[52] *Id.* at 5–6.

[53] *Id.* at 8.

[54] *Id*.

Smith's account.[55] Whether Mr. Rowe was terminated for behavioral issues or because of his

removal from the Smith's account and other reasons related to the alleged defamatory statements

is also an issue of fact. The termination letter that Mr. Rowe received states that his

"employment with Premier Sales Solutions is terminated effective immediately due to behavior

issues that have interfered with . . . [his] ability to perform . . . [his] duties on multiple

occasions."[56] On the other hand, Mr. Kinsella's deposition testimony states a different reason for

Mr. Rowe's termination:

> Q. Okay. So the reason for him to be terminated was there just wasn't work that
> he could do at Premier?
> A. Yes.
> . . .
> Q. Is that true?
> A. There wasn't anything for him to do.[57]

Defendants rely heavily on Mr. Kinsella's testimony—stating that the decision to remove

Mr. Rowe from the Smith account and the decision to terminate his employment were

independent of each other—but Mr. Kinsella's testimony is disputed by other evidence in the

record. For example, Mr. Kinsella testified that the reason he removed Mr. Rowe from the

Smith's account is because he had a conference call with Smith's employees (Shellie Hanson,

Zane Day, and Smith's HR department) and was lead to understand during the conference call

that Smith's wanted Mr. Rowe removed from their account.[58] Mr. Kinsella's testimony is

disputed by deposition testimony from Mr. Day and Ms. Hanson, who both state that they did not

discuss or request that Mr. Rowe be removed from the Smith's account.

---

[55] Opposition at xli, ¶¶ 150–151.

[56] Docket no. 38-4.

[57] Robert Kinsella Deposition 187:17–25, docket no. 38-4, filed November 5, 2014.

[58] Robert Kinsella Deposition, 126:20–128:25, docket no. 52-5, filed December 17, 2014.

Defendants' corollary argument that Mr. Rowe's inability to provide any useful services to his employer is an intervening cause to Mr. Rowe's employment termination is also disputed. "An intervening cause is an independent cause that intervenes between defendant's original negligent act or omission and the final result and is necessary in bringing about that result."[59] "A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described with the benefit of hindsight, as extraordinary."[60] Not all intervening forces are superseding causes. Premier's termination of Mr. Rowe's employment because there was nothing else Mr. Rowe could do for Premier, though perhaps intervening, does not necessarily break the chain of legal causation if the termination was reasonably foreseeable.

Ultimately, the viability of Mr. Rowe's defamation claim depends on which view of the above facts is accepted. Both sides have produced at least some evidence in support of their factual scenarios. If Defendants' view is accepted, then the termination of Mr. Rowe's employment was due to behavioral issues and reasons unrelated to any alleged defamatory statements by Defendants. And if Mr. Rowe's employment termination was due to behavioral issues, then there is no causal link between any of the alleged defamatory statements and Mr. Rowe's termination. In contrast, Mr. Rowe's view of the facts would indicate that Defendants' defamatory statements caused Mr. Rowe to be removed from the Smith's account. Mr. Rowe contends that had he not been removed from the Smith's account, he would not have been terminated from Premier—thus creating a causal link between Defendants' defamatory statements and Mr. Rowe's injury.

---

[59] *Robertson v. Sixpence Inns of Am., Inc.,* 789 P.2d 1040, 1047 (Arizona 1990).

[60] *Steffensen v. Smith's Mgmt. Corp.,* 820 P.2d 482, 488 (Utah Ct. App. 1991) (citing *Robertson,* 789 P.2d at 1047) *aff'd,* 862 P.2d 1342 (Utah 1993).

### B. Tortious Interference with Economic Relations

Defendants argue that summary judgment is also appropriate for Mr. Rowe's tortious interference claim because, similar to the defamation claim, (1) the allegedly wrongful actions fall under the common interest privilege and (2) the causation element of the claim is missing. In order to establish a tortious interference claim, "a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff."[61] "Improper means are present 'where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules.'"[62] "Improper means include 'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. Means may also be improper or wrongful because they violate an established standard of a trade or profession.'"[63]

### a. *A qualified privilege applies to Mr. Rowe's claim for tortious interference*

Mr. Rowe argues that Utah law does not "recognize[] that the common interest privilege protects a defendant from a claim for tortious interference," and "Mr. Rowe's review of Utah cases has uncovered no instance where a Utah court has applied the common interest privilege to a tortious interference claim."[64] In response, Defendants contend that "[w]hen a privilege applies, it extends to 'all claims arising from the same statements.'"[65] Defendants conclude that because "Mr. Rowe has conceded that his tortious interference claim is based on the same

---

[61] *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (abandoning improper-purpose liability).

[62] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982) *overruled on other grounds by Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553)).

[63] *Id.*

[64] Opposition at 20.

[65] Reply at 12 (citing *Debry v. Godbe*, 992 P.2d 979, 986 (Utah 1999)).

alleged defamatory statements as his defamation claim . . . . [his] tortious interference claim fails

for the same reasons as his defamation claim."[66]

Mr. Rowe is incorrect. "Utah courts have recognized a conditional privilege, also known

as a qualified privilege, in . . . intentional interference with prospective economic relations

cases[.]"[67] The qualified privilege is an affirmative defense.[68] Not only is qualified privilege

available for a claim for tortious interference, Defendants are correct that under Utah law, "a

privilege extends not only to defamation claims but to 'all claims arising from the same

statements.'"[69] The rationale is that a qualified privilege arises from the necessity for full and

unrestricted communication concerning the matter in which the parties have a common interest.

If the privilege did not apply to all claims arising from the same defamatory statements, then

plaintiffs could circumvent the privilege by recasting their claims as other torts.

Accordingly, because qualified privileged applies to the defamation claim,[70] it also

applies to Mr. Rowe's tortious interference claim because it is based on the same operative

defamatory statements.

### b. Whether there is a causal link between Defendants' interfering statements and Mr. Rowe's injury is in genuine dispute

Just as Defendants argue Mr. Rowe cannot show causation on his defamation claim,

Defendants argue that Mr. Rowe cannot prove the causation element of his tortious interference

claim. It is undisputed that the same statements that form the basis of Mr. Rowe's defamation

---

[66] Reply at 13.

[67] *Agee v. Morton Thiokol, Inc.*, 977 F.2d 595 (10th Cir. 1992) (unpublished opinion) (referencing *Leigh Furniture & Carpet Co.* 657 P.2d at 304). Although *Leigh Furniture* involved the tort of interference with *prospective* economic relations instead of the tort of interference with economic relations, the distinction is immaterial.

[68] *Leigh Furniture & Carpet Co.*, 657 P.2d at 303.

[69] *Debry*, 992 P.2d at 986 (quoting *Price v. Armour*, 949 P.2d 1251 (Utah 1997) (applying the judicial proceeding privilege to an intentional interference with business relations claim)); *see also Russell v. Thomson Newspapers, Inc*, 842 P.2d 898 (Utah 1992) (applying the qualified privilege of [the statute] to claims of emotional distress and invasion of privacy).

[70] *Supra* at 6.

claim also form the basis of his tortious interference claim. Therefore, Defendants' argument fails for the same reasons Defendants' causation argument on the defamation claim failed. Mr. Rowe has submitted evidence and made allegations that Defendants directed improper means, through defamatory statements, towards him. Viewing the record in the light most favorable to Mr. Rowe, there is a genuine issue of material fact regarding whether the alleged improper means were the cause of Mr. Rowe's removal from the Smith's account and the subsequent termination of his employment.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment[71] is DENIED.

Dated June 3, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[71] Docket no. 38.