IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS ROWE,<br><br>                        Plaintiff,<br><br>v.<br><br>DPI SPECIALTY FOODS, INC., JAMI FLOYD,<br><br>                        Defendants. | **MEMORANDUM DECISION AND ORDER**<br>• **GRANTING [83] PLAINTIFF'S MOTION IN LIMINE ON FACTS AND SUMMARIES OF TESTIMONY;**<br>• **GRANTING [84] PLAINTIFF'S MOTION IN LIMINE ON VOCATIONAL AND INDUSTRY OPINIONS; AND**<br>• **DENYING [85] PLAINTIFF'S MOTION IN LIMINE ON MITIGATION OF DAMAGES TESTIMONY**<br><br>Case No. 2:13-cv-00708-DN-DJF<br><br>District Judge David Nuffer |

Plaintiff Thomas Rowe filed three motions in limine[1] regarding testimony of Derk Rasmussen, the expert witness offered by DPI Specialty Foods, Inc. ("DPI"), and Jami Floyd (collectively, "Defendants"). The motions seek to exclude his testimony because he "makes assertions of fact, weighs the credibility of testimony or witnesses, opines on the probativeness of evidence, or provides a simple repetition or regurgitation of evidence;"[2] he is unqualified to make vocational and industry opinions outside his expertise;[3] and his report was filed late.[4] The

---

[1] Plaintiff's Motion In Limine No. 1: Daubert Motion to Exclude Rasmussen Statements of Fact and Summaries of Testimony ("Rowe's 83 Motion"), docket no. 83, filed July 24, 2015; Plaintiff's Motion In Limine No. 2: Daubert Motion to Exclude Unqualified Rasmussen Vocational and Industry Opinions ("Rowe's 84 Motion"), docket no. 84, filed July 24, 2015; and Plaintiff's Motion In Limine No. 3: Daubert Motion to Exclude Improper Expert Opinions on Mitigation of Damages (Rowe's 85 Motion"), docket no. 85, filed July 24, 2015. The page numbering in these motions begins with the second page of the motion marked as page 1; therefore, the page references in this order refer to the physical page, not the page number marked in the document.

[2] Rowe's 83 Motion at 1.

[3] Rowe's 84 Motion at 1–2.

[4] Rowe's 85 Motion at 1.

parties' memoranda and supporting documentation, supplemental briefing, and oral argument have been carefully reviewed.

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................................ 2
BACKGROUND ............................................................................................................................ 2
DEFENDANTS' EXPERT WITNESS ON DAMAGES, DERK G. RASMUSSEN .................... 3
    I.       Rowe's 83 Motion to Exclude Statements of Facts and Summaries of Testimony 4
          A.       Discussion ............................................................................................... 6
          B.       Conclusion ............................................................................................ 12
    II.      Rowe's 84 Motion to Exclude Unqualified Industry and Vocational Opinions ... 13
    III.    Rowe's 85 Motion to Exclude Improper Opinions on Mitigation of Damages .... 13
ORDER ......................................................................................................................................... 14

**BACKGROUND**

Mr. Rowe claims he was terminated from his employment at Premier Sales Solutions ("Premier") because Defendants made allegedly defamatory statements about him. Premier is a food broker that works with retailers and distributors. Mr. Rowe was employed by Premier for five years, during which time he worked on DPI's account with Smith's Food & Drug Centers, Inc. ("Smith's"). Prior to joining Premier, Mr. Rowe had worked with Smith's in the deli category for approximately fourteen years.

Premier had contracted with DPI to assist DPI with the sale of deli food products to Smith's. DPI is a distributor and manufacturer of various specialty food items and markets its items to various retailers, including Smith's. During the time period in which the alleged defamatory statements occurred, Mr. Rowe was the lead of the Premier team that assisted and supported DPI in supplying deli products to Smith's, and Ms. Floyd was the head of the DPI team responsible for deli sales to Smith's.

Mr. Rowe's Complaint asserts two causes of action—defamation and tortious interference with economic relations ("tortious interference"). Mr. Rowe alleges that in August, 2012, Ms. Floyd, within the course and scope of her employment with DPI, began to make defamatory statements regarding Mr. Rowe.[5] Mr. Rowe argues the defamatory statements caused him to be removed from the Smith's account in September 2012. And although Mr. Rowe remained employed with Premier for several months after his removal from the Smith's account, Premier ultimately terminated his employment in January 2013. Mr. Rowe contends that the termination was a result of Defendants' defamatory statements.[6]

Mr. Rowe's Complaint alleges damages resulting from the Defendants' alleged harms: "a substantial loss of income and professional prospects and prestige"[7] and prevention from "securing equally lucrative employment."[8] In his initial disclosures, Mr. Rowe calculated approximate damages for loss of earnings and benefits; loss of reputation; loss of economic relations; emotional distress, pain, and suffering; and value of reparative work.[9]

## DEFENDANTS' EXPERT WITNESS ON DAMAGES, DERK G. RASMUSSEN

To support his claim for damages, Mr. Rowe has offered an expert witness, Jeremy Sharpe. Mr. Sharpe opines on a calculated value of the economic damages of Mr. Rowe in connection with his termination from Premier.[10] Importantly, Mr. Sharpe cited to the allegations

---

[5] Complaint ¶ 20, at 4, attached as Exhibit 1 to Notice of Removal, docket no 2-1, filed July 29, 2013.

[6] *Id.* ¶ 51, at 8.

[7] *Id*. ¶ 41, at 7,

[8] *Id.* ¶ 51, at 8.

[9] Initial Disclosures of Plaintiff Thomas Rowe at 5–6 Part C, attached as Exhibit 1 to Memorandum in Opposition to Defendants' Motion in Limine No. 4 RE: "Irrelevant" Defamatory Statements, docket no. 91-1, filed July 28, 2015.

[10] *See generally* Expert Report of Jeremy Sharpe, attached as Exhibit D to Appendix of Exhibits in Support of Defendants' Opposition to Plaintiff's Motions in Limine, docket no. 100-4, filed July 28, 2015; *id.* at 1.

in Mr. Rowe's Complaint and stated that his "report is based on an assumption of liability. I have done no work to determine liability and do not expect to do any such work."[11] To rebut Mr. Sharpe, Defendants designated Mr. Rasmussen as an expert.[12]

Mr. Rasmussen is the president and a principal shareholder of Sage Forensic Accounting in Salt Lake City, Utah.[13] He holds an MBA and is a certified public accountant.[14] He has earned credentials from the American Institute of Certified Public Accounts (the Accredited in Business Valuation and Certified in Financial Forensics), the American Society of Appraisers (Accredited Senior Appraiser designation), and the Association of Certified Fraud Examiners (designation of Certified Fraud Examiner).[15] He is also a member of the Association of Certified Fraud Examiners and the American Society of Appraisers.[16] Mr. Rasmussen reports having "over thirty years of experience in performing assignments involving forensic/investigative accounting, business valuations, economic damages, and reviewing the reports of others in [his] field,"[17] and his resume documents 127 separate engagements as an expert witness.[18]

### I.  Rowe's 83 Motion to Exclude Statements of Facts and Summaries of Testimony

Mr. Rowe's motion in limine to exclude statements of facts and summaries of testimony does not challenge the sufficiency of Mr. Rasmussen's qualifications as an economic expert

---

[11] *Id.*

[12] Defendants' Expert Designations, docket no. 32, filed Sep. 5, 2014.

[13] *Id.* at 1; *see also* Expert Report of Derk G. Rasmussen ("Rasmussen Report") at 22, Part VIII (Qualifications), attached as Exhibit 1 to Appendix of Exhibits in Support of Plaintiff's Motions in Limine, docket no. 87-1, filed July 24, 2015.

[14] Defendants' Expert Designations at 1.

[15] Rasmussen Report at 22, Part VIII (Qualifications).

[16] *Id.*

[17] *Id.*

[18] Summary of Expert Witness Testimony in Derk G. Rasmussen CV at 6–10, attached as Exhibit 3 to Appendix of Exhibits in Support of Plaintiff's Motions in Limine, docket no. 87-3, filed July 24, 2015.

witness. Rather, Mr. Rowe challenges the substance of Mr. Rasmussen's opinions, evidenced in depositions and the Rasmussen Report, arguing that they "invade the proper province of the jury to weigh the facts and evaluate witness credibility."[19] Mr. Rowe characterizes the Rasmussen report as "loaded with factual assertions and regurgitation of testimony . . . providing very little economic analysis at all."[20] Moreover, Mr. Rowe argues that "Mr. Rasmussen's many factual assertions are not mere assumptions on which his real opinions rest. Rather, he is forthright in admitting that his factual assertions represent his expert opinions in this case, and he intends to share them with the jury."[21]

Mr. Rowe argues that because the jury "needs no assistance determining what evidence it will and won't believe," Mr. Rasmussen's personal weighing of evidence and factual conclusions are not helpful to the jury as required under Federal Rule of Evidence 702, but actually invade the role of the jury, and should therefore be excluded.[22] Furthermore, Mr. Rowe argues that because there is no economic methodology involved in Mr. Rasmussen's decisions to trust the testimony of one witness over another, and regard some facts as important and others as non-essential, his testimony is not reliable.[23] And finally, Mr. Rowe argues that Mr. Rasmussen should not be permitted "to add his 'expert' imprimatur to make [evidence] seem more credible."[24]

Defendants oppose Mr. Rowe's motion, arguing that "[a]t best, Mr. Rowe misapprehends Mr. Rasmussen's testimony," arguing that Mr. Rasmussen doesn't attempt to bolster or weigh

---

[19] Rowe's 83 Motion at 2.
[20] *Id.* at 2, 3.
[21] *Id.* at 3.
[22] *Id*. at 4.
[23] *Id.*
[24] *Id.*

evidence; rather, Mr. Rasmussen's discussion of the evidence is intended to point out and explain that Mr. Sharpe's damages analysis is not tied to the facts of the case.[25] Defendants argue that Mr. Rowe offers an opinion on economic causation which is necessarily tied to the facts of the case. "[L]ike any credible expert witness, Mr. Rasmussen has formulated expert opinions based on the factual record of the case"[26] as required by the rules of evidence,[27] and he "should be permitted to offer his opinion and be allowed to explain the grounds for that opinion, even if that means (as it should) referencing statements made by fact witnesses in the case."[28]

### A. Discussion

In the Rasmussen Report, Mr. Rasmussen provides background on the case and then in Section II on "Financial experts and economic causation" attempts to lay the foundation for his role and approach in this case. He describes his task as follows:

> Simply stated, the analysis of economic damages requires a determination of the injured party's economic expectations before the alleged injurious event (but for) compared with actual economic performance during the damage period and expectations into the future. This concept is illustrated in the following excerpt:
>
>> The first step in a damage study translates the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the plaintiff's economic position if the harmful event had not occurred and the plaintiff's actual economic position. The damages study restates the plaintiff's position "but for" the harmful event; this step is often called the but-for analysis.

---

[25] Defendants' Opposition to Plaintiff's Motion in Limine No. 1: Daubert Motion to Exclude Rasmussen Statements of Fact and Summaries of Testimony at 2, docket no. 96, filed July 28, 2015. The page numbering in Defendants' opposition begins with page 2 marked as page 1; therefore, the page reference refers to the physical page, not the page number marked in the document.

[26] *Id.*

[27] *Id.* at 3 (citing FED. R. EVID. 702 (expert testimony must be "based on sufficient facts or data") and FED. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."))

[28] *Id.* at 2.

> Damages, then, are the difference between the but-for value and the actual value.[29]

According to Mr. Rasmussen, "[c]ommon errors in economic damage analyses are found to arise from incorrect or flawed use of estimates and related assumptions."[30] Indeed, the thrust of Mr. Rasmussen's evaluation of Mr. Sharpe's economic loss calculations is that Mr. Sharpe's assumptions were flawed because he did not consider many factors Mr. Rasmussen believed to be relevant, and he argues that Mr. Sharpe's assumptions about the case were either incomplete or incorrect.[31] Mr. Rasmussen summarizes Mr. Sharpe's assumptions as follows:

> Mr. Sharpe makes the following assumptions related to his calculation of alleged economic damages:
> 1. Past lost earnings: Mr. Sharpe assumes that Mr. Rowe lost his job as a result of DPI's actions.
>> a. He assumes that Mr. Rowe's current occupation is his highest and best attainable level of employment and earnings potential based on his current circumstances.
>> b. He assumes that Mr. Rowe suffered losses of fringe benefits.
>> c. He assumes that Mr. Rowe's expected and alleged lost income should be adjusted based on merit.
> 2. Future lost earnings capacity/income: Mr. Sharpe assumes that Mr. Rowe's expected future employment is limited only by age.
>> a. He assumes that Mr. Rowe's current occupation is his highest and best attainable level of employment and earnings potential based on his current circumstances.
>> b. He assumes that Mr. Rowe suffered losses of fringe benefits.
>> c. He assumes that Mr. Rowe's expected and alleged lost income should be adjusted based on merit.[32]

The identification of Mr. Sharpe's assumptions is a legitimate function for Mr. Rasmussen.

However, Mr. Rasmussen's opinion is not limited to an evaluation of Mr. Sharpe's assumptions. Continuing in Section II, Mr. Rasmussen claims a broader scope to his role: he

---

[29] Rasmussen Report at 4 (citing Roman L. Weil, Michael J. Wagner, and Peter B. Frank, *Litigation Services Handbook: The Role of the Financial Expert* 5.4 (3d ed. 2001).

[30] *Id.* at 5.

[31] *See generally id.* at Section III.

[32] *Id*. at 7–8.

states that "[w]hen evaluating a damage claim, one must ensure that each claimed economic impact can be traced back to the incident. This is where the concept of causation or causal link is integrated into the analysis of economic damages."[33] Mr. Rasmussen then cites authorities to support his discussion of causation:

> The second element of a lost profit claim is causation. Whether a claim relates to a tort or a breach of contract, the plaintiff must prove that the defendant's actions caused the damage to the plaintiff. While causation may be obvious, proving this element of damage can often be difficult. For example, assume a defendant admits responsibility for the fire that closed the plaintiff's boutique jewelry business for seven months. Also assume, however, that a large national discount jewelry store opened across the street from the plaintiff's business six weeks before the fire. Although the plaintiff can demonstrate that it was closed for seven months and lost profits during this period of time, the amount of profits lost due to the fire and the amount of profits that would have been lost in any event due to the increased competition is a matter of uncertainty.[34]

Mr. Rasmussen twists this text into a concept not supported by the text, or by any of the reference material he cites in Section II. He concludes that there are two forms of causation, economic and legal, and that his legitimate role is to opine on economic causation. He states:

> The above excerpt highlights the two different contexts of causation, legal and economic. While they may overlap, failing to understand what causation means in the economic damage context could easily result in a damage claim for amounts that cannot be linked with any certainty to the damaging event – claiming amounts that would have been lost even if the damaging event had not occurred.
>
> Based on relevant professional literature and my experience in performing economic damage analyses and reviewing analyses of others, one of the foremost deficiencies in damage evaluations is the assessment of causation.[35]

This passage shows the beginning of Mr. Rasmussen's created dichotomy between economic and legal causation that he attempts to exploit. The text he cites does not support his interpretation

---

[33] *Id.* at 5.

[34] *Id.* (citing PPC's Guide to Litigation Support Services, Volume 1, ¶ 401.6 at 4-4).

[35] *Id.*

that there is "economic" causation different from legal causation or that it is his role as an expert to opine on either.

Mr. Rasmussen cites three editions of the same Litigations Service Handbook to support his theory that the topic of causation "continues to be expanded," and notes the authorities counsel that "the [economic expert] should not blindly accept the conclusions of others without exercising due professional skepticism in applying these conclusions to the facts of the case."[36] However, he twists this citation about blind acceptance of others' conclusions into the assertion that "an expert has a duty to understand and prove that a causal link exists between the incident and each of the damages elements," and that "an expert is specifically precluded from relying upon an assumption that economic causation exists."[37] His assumption of a duty to "prove" is unfounded.

Mr. Rasmussen's misreading of the texts he cites is very troubling. But significantly more troubling are his assumptions about his role in the courtroom. An expert witness has no duty to *prove* causal links between incident and damages. An expert opines on facts which the expert assumes will be proven, and an expert can explain the bases for an opinion. But an expert is not to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury.

His cited references correctly state that experts must understand and carefully examine causation, but they do not state that experts have any role in proving and then concluding issues of causation as he suggests. Only evidence can establish proof, only the jury can find facts and decide issues of causation, and only the attorneys in the case can argue about the meaning of the

---

[36] *Id.* at 6 (citing Roman L. Weil, Daniel G. Lentz, and David P. Hoffman. *Litigation Services Handbook: The Role of the Financial Expert* 4.22 (5th ed. 2012).

[37] *Id.* at 6.

evidence. Contrary to Mr. Rasmussen's erroneous statement that experts are precluded from relying on assumptions of causation,[38] it is necessarily the role of a damages expert to offer an opinion based only on assumptions because only the jury has the opportunity to conclude the factual issues in the case. Until a jury has found facts to resolve the factual issues presented to them, an expert has nothing other than assumptions on which economic analysis may be based.

Mr. Rasmussen broadly asserts that "the consideration of all facts available in a case is critical to any economic loss analysis."[39] He interprets this to mean, however, not only that he must *consider* the facts, but that he must opine about the facts. In his deposition testimony, opposing counsel attempted to draw some limitations to his broad review of "all facts available," but Mr. Rasmussen refused even to concede that a fact must be related to the causal chain in order for him to properly testify on it.[40] Not only does he wrongly believe he has a duty to analyze evidence and prove causation, he believes there is virtually no limit to the breadth of his review.

In his deposition, Mr. Rasmussen testified that he is not an authorized interpreter of testimony[41] but that his role as an assessor of economic causation gives him license to weigh and

---

[38] *Id.*

[39] *Id.* at 7.

[40] Deposition of Derk G. Rasmussen ("Rasmussen Dep.") 106:4–14, excerpts attached as Exhibit 4 to Appendix of Exhibits in Support of Plaintiff's Motions in Limine, docket no. 87-4, filed July 24, 2015 ("Q. Isn't it true -- well, shouldn't you have to be able to link up a fact to the ultimate injury in a causation sense before it can be relevant to economic causation? A. All of the facts -- you have to assess all of the facts that are available and determine whether or not they support or don't support your assumption of causation. That's an additional fact that's out there that demonstrates the baggage that Mr. Rowe had. That's all it is.").

[41] Rasmussen Dep. 101:5–22 ("Q. In looking at the biggest paragraph there that begins, "Mr. Kinsella's." It says, "Mr. Kinsella's testimony refutes the allegation that DPI or Ms. Floyd had anything to do with Mr. Rowe's termination. It appears that it was solely Premier's decision to remove Mr. Rowe from the Smith's account." That is an opinion that I take it you would be offering to the jury if asked? A. That's what it appears, based on the evidence – Q. Okay. A. -- based on what Mr. Kinsella is saying. Q. All right. So do you view yourself as sort of an authorized interpreter of testimony in this case? A. No, I have to look at the testimony and look at it from an economic point of view and determine whether or not it has an impact on the economic causation. This is just another example of that.").

compare facts and reliability of witnesses "because all of that has bearing on causation."[42] Indeed, by invoking economics, Mr. Rasmussen restates facts and draws conclusions on issues like the factual cause for Mr. Rowe's termination, because "[t]hat's the economics that [he] see[s]."[43]

In his expert report, Mr. Rasmussen writes consistent with his theory of his role. Of the twenty pages of his report, about seven pages are direct recitations of deposition testimony, which he weighs and critiques. Furthermore, about three pages are summary or characterization of facts as he sees them based on the record. Mr. Rasmussen also spends about four pages to incorrectly state his role as an expert witness.

Beyond issues of causation and evidence, he also states that it is necessary for an economic expert to consider and understand how the findings of other experts, like medical and vocation experts, relate to the economic analysis, "determin[ing] the reliability of or identify[ing] evidence supporting any assumptions they make or the data points upon which they form their analysis."[44] Here Mr. Rasmussen departs from his role as an economic expert. He cannot evaluate what he is not competent to do. His evaluation of damages may not extend to second-guessing the determinations and assumptions underlying the opinions of experts on issues entirely outside of his qualifications.

---

[42] Rasmussen Dep. 34:22–35:6 ("Q. And, in assessing economic causation, this part that you have testified that's within your province, does that, then, provide you license to weigh and compare facts and reliability of witnesses in arriving at your opinion as to what caused what? A. From an economic point of view, yes. And that's why, based on my experience, expert witnesses are allowed to sit in the courtroom and listen to all of the testimony, because all of that has a bearing on causation, for example.")

[43] Rasmussen Dep. 94:1–9 ("A. The personal -- in my opinion, just based on the economics and my review of the economics, what happened here is Mr. -- Mr. Rowe's professional goodwill evaporated because of people being removed out of the situation and because he's got new people in there that maybe his personality doesn't match up well with. Q. And you expect to offer that opinion to the jury? A. That's the economics that I see, yes.").

[44] Rasmussen Report at 7.

B. **Conclusion**

Rasmussen misinterprets the sources he cites in his report. He should understand causation and base his opinions on sound causation but is not to argue causation or prove it. There is no support for his distinction of economic and legal causation, nor is there support for the elevation of his role to proponent of evidence, advocate of theories, or finder of facts. Most of what he does is in the province of the witnesses in offering evidence, of the jury in determining facts, and of counsel in arguing theories. Mr. Rasmussen would elevate himself above the witnesses, attorneys, other experts, and even the jury in drawing conclusions. The only potentially proper portion of his testimony is the identification of assumptions Mr. Sharpe made and factors he may not have considered in his damages analysis. The rest of his testimony is not helpful.

"An expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."[45] Mr. Rasmussen is not using economic methodology to determine which evidence to emphasize, which witnesses to believe, or which conclusions to draw; he merely draws a conclusion as to what he believes happened in this case and then labels that conclusion as "the economics."[46] Mr. Rasmussen's testimony would only serve "to add his 'expert' imprimatur to make [evidence] seem more credible."[47]

Because of his serious misconception of his role and misreading of the authorities he cites, however, he will not be permitted to testify except as to the assumptions Mr. Sharpe

---

[45] *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981).

[46] Rasmussen Dep. 94:1–9.

[47] Rowe's 83 Motion at 4.

makes. His testimony is otherwise not "the product of reliable principles and methods"and is not otherwise helpful to the jury.[48]

## II. Rowe's 84 Motion to Exclude Unqualified Industry and Vocational Opinions

With confidence similar to that exhibited in evaluating and reciting testimony and providing argument, Mr. Rasmussen also opines on vocational issues and facts about the food brokerage industry. These are well summarized in Rowe's 84 Motion.[49] Because Mr. Rasmussen has failed to stay "within the reasonable confines of his subject area,"[50] Rowe's 84 Motion is GRANTED.

## III. Rowe's 85 Motion to Exclude Improper Opinions on Mitigation of Damages

Mr. Rowe seeks to exclude Mr. Rasmussen's opinions on mitigation of damages because he was not disclosed timely.[51] Under the amended scheduling order,[52] the deadline for expert reports from the party bearing the burden on the issue for which the expert opinion is offered was August 8, 2014,[53] and the deadline provided for expert reports for the party responding to any expert report was September 5, 2014.[54] Defendants filed Mr. Rasmussen's report on September 5, 2014. It may have been untimely on the affirmative defense of mitigation of damages, but the motion should have been made earlier if that was a serious concern. Therefore, Rowe's 85 Motion is DENIED.

---

[48] Fed. R. Evid. 702.

[49] Rowe's 84 Motion at 2–4.

[50] *Ho v. Michelin N. Am., Inc.,* 520 F. App'x 658, 663 (10th Cir. 2013) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)).

[51] Rowe's 85 Motion at 1–3.

[52] Order to Amend Scheduling Order, docket no. 19, filed Mar. 24, 2014.

[53] *Id.* at 1.

[54] *Id.* at 2.

**ORDER**

Rowe's 83 Motion to exclude fact statements and summaries of testimony [55] and Rowe's 84 Motion to exclude unqualified industry and vocational opinions [56] are GRANTED, and Rowe's 85 Motion[57] to exclude based on untimely disclosure is DENIED. Mr. Rasmussen is precluded from offering any testimony at trial.

Signed August 19, 2015.

BY THE COURT

David Nuffer
United States District Judge

---

[55] Plaintiff's Motion In Limine No. 1: Daubert Motion to Exclude Rasmussen Statements of Fact and Summaries of Testimony, docket no. 83, filed July 24, 2015.

[56] Plaintiff's Motion In Limine No. 2: Daubert Motion to Exclude Unqualified Rasmussen Vocational and Industry Opinions, docket no. 84, filed July 24, 2015.

[57] Plaintiff's Motion In Limine No. 3: Daubert Motion to Exclude Improper Expert Opinions on Mitigation of Damages, docket no. 85, filed July 24, 2015.